FILED

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

2010 MAR 16 P 2: 59

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| Amrik Singh ) | |
| ) | |
| 6603 Thomas Grant Court ) | |
| ) | |
| Alexandria, VA 22315 ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Action No. 1:10cv252 |
| V. ) | LO/TRJ |
| Washington Post Company, Inc ) | |
| ) | |
| 1150 Fifteenth Street NW ) | |
| ) | |
| Washington D.C. 20071-7800 ) | |
| ) | |
| Defendant ) | |

## COMPLAINT

## (DISCRIMINATION EMPLOYMENT)

The plaintiff is a former employee of the Washington Post Company, Inc. complaining in the termination of his employment and related events. He files this complaint pro se to meet the limitation period while seeking an attorney to represent him in court. He complains of discrimination based on age, national origin (Indian), religion (Sikh).

### Jurisdiction

1. This court has jurisdiction over the subject matter of this action Pursuant to the Title VII of the civil rights act or the age discrimination in

employment act.

## Venue

2. The defendant employed the plaintiff in this district and the discriminatory acts occurred in this district.

## Exhaustion of Administrative Remedies

3. Plaintiff exhausted his administrative remedies. He timely filed a complaint of discrimination with the equal employment opportunity commission (EEOC) and received a right to sue letter. He filed this action within 90 days of receipt of the right to sue letter.

## Parties

4. Plaintiff is an Indian male of the Sikh religion and was born on June 18, 1923. He wears a turban. He is a resident of the state of Virginia.

5. Defendant is an employer doing business and employing more than hundred persons in Virginia and else where.

## Factual Background to, and Basis of, the Complaint

6. Plaintiff has started work with the defendant from September 1987. At that time there was great shortage of inserters. Advertisements after advertisements were given in the newspapers with allurements. The advertisements started much before September 1987 and continued over three years thereafter. Thus plaintiff deserves some consideration. However

opposite treatment has been given to the plaintiff because over half the people who do not come in this category are working after June 17, 2006 while plaintiff was terminated.

7. The defendant employed plaintiff at pertinent times as inserter at approximately $6.85/hour in its Springfield plant. The plaintiff inserted supplements and other materials into newspapers.

8. Plaintiff worked with many supervisors from September 1987 till June 2006 when he was told by supervisor Mr. Charlie Price not to work anymore. One more person Mr. Dharamjit Singh who like plaintiff is a turbaned Sikh was also his victim. Names of supervisors with whom plaintiff worked are Messrs Ronald Lotanzio, Monte Fleming, Norman Brent, Dennis Bailey, Dave Hibbits, Nate Royster, and Tommy Fletcher. There were two lady supervisors also but only from 2006. All the supervisors had cordial relations with mutual respect with the plaintiff. Plaintiff had received good treatment from all of them. Then Mr. Charlie Price came on the scene. After a while his treatment with plaintiff became absolutely opposite to all of these. Here, a few instances are given. Once when working on the inserting line an inserter Mr. Harcharan Singh passed an insulting remark. Plaintiff complained to Mr. Charlie Price, the supervisor. He replied why complaint was not made right away but at the

end of the shift. Later complaint was withdrawn at which he again showed his indignation. At another instance an inserter Ms. Gurmail Kaur drove past the plaintiff with great speed when he was still in the crosswalk. Plaintiff was alarmed because of possible injuries. Plaintiff approached Mr. Charlie Price, the supervisor. It was a surprise when he said that security personnel be contacted. Plaintiff then approached Mr. Lawrence Johnson, the assistant superintendent. He said that he would look into it. Next day Mr. Lawrence Johnson, the assistant superintendent asked the plaintiff to repeat what he had said the previous day. Plaintiff said that it was another day. He had thought about it and now can protect himself from the faulty driving of the inserter and the matter may rest. But Mr. Dave Hibbits who was Listening said that he must instruct the driver suitably which he did. It is an ordinary matter with supervisors to accommodate an inserter if he could possibly be late by a few minutes once in a blue moon but that would not be with Mr. Charlie Price, the supervisor when plaintiff needed such accommodation. No supervisor sent plaintiff home when he showed up in time but Mr. Charlie Price did that twice without any reason.

9. At the work place, circulation decreased and so necessity arose to adopt a strategy. The defendant reduced number of days of several inserters to meet that situation in place of defendant's false claim that the termination

of workers became necessary. Plaintiff was terminated on June 17, 2006 while others almost all of them are working from that date. The defendant through plaintiff's supervisor has treated the plaintiff differently in the application of workplace rules. This differential treatment was motivated by illegal discriminatory intent.

10. One person Gurcharan Singh is addicted to alcohol. His performance is poor. Once he came to work but could not continue to complete the shift and went home. He came to work after several days thereafter. Plaintiff's performance is much superior to his. He continues to work while Plaintiff was terminated on June 17, 2006. The defendant through plaintiff's supervisor has treated the plaintiff differently in the application of workplace rules. This differential treatment was motivated by illegal discriminatory intent.

11. One person Mr. Joe Ermi is addicted to tobacco and his performance was poor. Once he was told not to come to work for a while. He came to work after several months may be six or more. Plaintiff's performance is much superior to this person's but he continues to work while plaintiff was terminated on June17, 2006. The defendant through plaintiff's supervisor has treated the plaintiff differently in the application of workplace rules. This differential treatment was motivated by illegal discriminatory intent.

12. One person Ms. Musharaf Begam was very much upset and told me that the supervisor had told her that she was too slow. She is also obese. Plaintiff's performance is much superior to hers. She continues to work while plaintiff was terminated on June 17, 2006. Thus the defendant through plaintiff's supervisor has treated the plaintiff differently in the application of workplace rules. This differential treatment was motivated by illegal discriminatory intent.

13. One person Mr. Harbans Singh showed up for work on time and was repeatedly turned back for several months. Plaintiff's performance is much superior to this person's. He continues to work while plaintiff was terminated on June 17, 2006. Thus the defendant through plaintiff's supervisor has treated the plaintiff differently in the application of workplace rules. This differential treatment was motivated by illegal discriminatory intent.

14. One person Mr. Mohammad Sharif is afflicted with diabetes. His attendance is also very dismal. He has now stopped working and is under treatment. Performance of plaintiff is much superior to this person's. He has continued to work much after June17, 2006 while plaintiff was terminated. Thus the defendant through plaintiff's supervisor has treated the plaintiff differently in the application of workplace rules. This

differential treatment was motivated by illegal discriminatory intent.

15. Plaintiff has served the company for nineteen years but was terminated on June 17, 2006 for no reason. On information and belief almost all inserters who continued to work after June 17, 2006 had worked with the company as inserters for a much lesser period and some as little as three years or less. The defendant through plaintiff's supervisor has treated the plaintiff differently in the application of workplace rules. This differential treatment was motivated by illegal discriminatory intent.

16. There used to be some extra (say about 10%) apart from regular work, which was given to most people by turns. Before a year or so of June 17, 2006 that was stopped and they started to give that work to a few people by pick and choose. Being unjustly excluded plaintiff protested and held a meeting with Mr. Ty Hensel, superintendent who rarely came to work where inserters were working. In the course of conversation with the superintendent when plaintiff observed that his predecessor came quite often he said that he was too busy. When nothing came out of that meeting plaintiff compared his work with other inserters in the line that plaintiff was a fast worker and wrote about five letters about thirty different dates to which he took no action and was completely silent. None other who was similarly situated protested presumably being unsure of their capacity and

are still working after June 17, 2006.

17. Mr. John B. Kennedy, the counsel for the company has in a letter of July 31, 2006 written to the plaintiff that," The Post appreciates your work as an inserter at the Springfield plant over the years".

18. Plaintiff has retired as Chief Engineer (equivalent to Brigadier General in the army) in the Irrigation Department of Punjab (India) State Government after serving over thirty-four years having entered service as Assistant Engineer. Plaintiff has post graduate qualification in Engineering. Thus plaintiff could be counted amongst Masters in Engineering. While serving as executive Engineer which position is two positions below Chief Engineer plaintiff made a singular contribution to internationally famous Beas Dam at Pong. While many other Executive Engineers with their crews moved mountains of earth into the Beas Dam at Pong plaintiff achieved a remarkable success in starting and completion of installation of all the gates and mechanical equipment as the only executive Engineer in charge from 1971 to 1974 when the flow of the river was completely controlled. Plaintiff was in charge of all the three eight hour shifts in which the plaintiff directed the work of over a hundred employees. The benefits from the Beas Dam at Pong are colossal being in several trillions of dollars during the life of the Dam and has provided employment to two million people from the

utilization of power and the irrigation water. Probably till today the world and the region have already benefited to the tune of a trillion dollars. It was a unique achievement. This shows plaintiff's work history of achievement and commitment. Once Secretary to the Govt. of India in charge of Beas Dam at Pong among other responsibilities came to the site of work and gave a hug to the plaintiff. He also promoted the plaintiff to the post of Superintendent Engineer soon thereafter. Plaintiff also served as a Sports Officer for thousands of officers and men at that time. No other inserter comes even remotely close to the achievements and qualifications of the Plaintiff.

19. It is ridiculous and false on the part of the defendant to claim that previously no attention was paid to the performance of inserters but suddenly performance by the inserters became so important.

20. No norms have been laid out by the defendant as to how many inserts are expected from each inserter during a specified period.

21. To meet the ends of justice it is necessary that the defendant give names of persons who worked before June 17, 2006 and for what periods and names of persons who worked after June 17, 2006 and for what periods. This most important and most relevant information has been suppressed by the defendant.

22. Since over a year, College Park Facility where inserting work was also done has now been stopped. This has resulted in great increase in the inserting work at the Springfield plant may be to the tune of maximum ever over here.

23. The different treatment of the plaintiff particularly through the plaintiff's supervisor was motivated by discriminatory intent, was willful, premeditated, reckless and outrageous to an extent warranting an award of punitive damages to deter such conduct by other employers.

## COUNT ONE

(Age Discrimination in Employment)

24. The above paragraphs are re-alleged and incorporated by reference here.

25. The defendant's conduct as alleged above constitutes discrimination violating the age discrimination in Employment Act.

## COUNT TWO

(National Origin Discrimination in Employment)

26. The above paragraphs are re-alleged and incorporated by reference here.

27. Defendant's conduct as alleged above constitutes discrimination violating Title VII of the Civil Rights Act of 1964 because of the plaintiff's

national origin.

## COUNT THREE

(Religious Discrimination in Employment)

28. The above paragraphs are re-alleged and incorporated by reference here.

29. Defendant's conduct as alleged above constitutes discrimination violating Title VII of Civil Rights Act of 1964 because of the plaintiff's religion.

## JURY DEMAND

The plaintiff demands a trial by Jury.

## REQUESTED RELIEF

WHEREFORE, the plaintiff requests that the Court:

Make a finding that Age Discrimination in Employment Act Title VII of the Civil Rights Act has been violated.

The plaintiff further prays that the court provide the following awards and other relief to him;

1) any and all back pay lost not paid plaintiff since June 2006.

2) the monetary value of any and all employment benefits not provided plaintiff since June 2006.

3) retroactive reinstatement in employment with the defendant.

Alternatively any and all front pay and monetary value of employment benefits for three years from the date of judgment which plaintiff would have been paid but for his firing or alternatively order plaintiff reinstated with defendant with full seniority pay and employment benefits which he should have received but for termination.

4) compensatory damages upto three hundred thousand dollars ($300,000) as justified by the evidence in this case

5) punitive damages as warranted under law and justified by the evidence in this case.

6) award costs and reasonable attorney fees incurred in connection with this lawsuit and the underlined administrative proceedings and

7) such other damages, penalties against the employer and relief as deemed just and appropriate.

Date March 16, 2010

Amrik Singh
(Amrik Singh)
6603 Thomas Grant Ct
Alexandria, VA 22315
Ph. No: (703)541-3134